[No. 15152. Department Two.—August 26, 1893.]

IN THE MATTER OF THE ESTATE OF WILLIAM E. JAMES, DECEASED.

DIVORCE — NON-RESIDENT DEFENDANT — PUBLICATION OF SUMMONS — CONSTRUCTIVE SERVICE — VALIDITY OF DECREE. — A decree of divorce which has been regularly obtained in one state by a citizen thereof against a non-resident defendant constructively served with process by publication of summons, and without other notice, and which is valid and effectual in the state in which such decree is rendered, is equally valid in a sister state.

ID. — JURISDICTION OF SUBJECT-MATTER — DEFECTIVE COMPLAINT — COLLATERAL ATTACK UPON JUDGMENT. — Where the complaint in a divorce suit is sufficient to inform the court and the defendant of the relief demanded, and of the facts upon which the plaintiff bases his right to the relief sought, it is sufficient to give the court jurisdiction of the subject-matter of the action, and its judgment as a court of general jurisdiction cannot be collaterally attacked for error upon the ground that the complaint was defective and not sufficient to entitle plaintiff to the relief demanded therein and awarded by the judgment.

ID. — JURISDICTIONAL FACTS — RECITAL IN JUDGMENT — COLLATERAL IMPEACHMENT OF RECORD — RESIDENCE OF PLAINTIFF — CONFLICTING EVIDENCE — APPEAL. — It is competent collaterally to impeach a judgment of divorce rendered in another state by extrinsic evidence showing that the facts necessary to give the court pronouncing it jurisdiction to proceed did not exist, notwithstanding a recital of such facts in the judgment; but where, upon such collateral attack, the evidence is conflicting as to whether the plaintiff was a *bona fide* resident of the state for the length of time required to give jurisdiction to the court, a finding of the court that he was such resident for a sufficient length of time will not be disturbed upon appeal.

ID. — ORDER FOR PUBLICATION OF SUMMONS — WANT OF SIGNATURE — IRREGULARITY — DEFAULT JUDGMENT — COLLATERAL ATTACK. — Where the order for publication of summons in an action of divorce in the state of Missouri, as actually published, was full and complete, and purported to have been signed by the proper officer, the neglect of the clerk to sign his name at the foot of the order entered by him in the proper book kept for the entry of such orders should be treated upon collateral attack upon the judgment entered by default, based on such order, as a mere clerical omission in matter more of form than of substance, which was cured by the entry of judgment, and such irregularity in one of the steps taken in obtaining jurisdiction cannot be collaterally assailed, there not being an entire want of jurisdiction to render the judgment.

ID. — EFFECT OF ABSOLUTE DIVORCE — CHANGE OF STATUS — SUBSEQUENT DIVORCE FROM BED AND BOARD — FAILURE TO PLEAD PRIOR DIVORCE IN BAR. — Where a divorce from the bonds of matrimony was obtained by a husband residing in the state of Missouri from his wife residing in the state of New York by publication of summons, and after his return to New York, a divorce from bed and board, and a decree for alimony, and the custody of children was subsequently obtained by her against him, but the decree of divorce in his favor was not called to the attention of the court in New York rendering the latter judgment, *held*, that his failure to plead the judgment of divorce in bar of the subsequent action did not have the effect to change his *status* as a single man given him by the decree of divorce rendered in the state of Missouri.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order refusing to revoke and grant letters of administration.

The facts are stated in the opinion of the court.

*Horace W. Philbrook,* for Appellant.

*Z. N. Goldsby,* and *Joseph H. Skirm,* for Respondent.

DE HAVEN, J.—This proceeding was commenced in the superior court of Santa Cruz County under the provisions of section 1383 of the Code of Civil Procedure, and the petitioner therein, Sarah M. James, appeals from an order of that court refusing to revoke letters of administration theretofore issued to the respondent, Leonora A. James, upon the estate of William E. James, deceased, and also refusing to grant letters of administration upon the said estate to the petitioner.

The petitioner and the respondent each claims to be the widow of the deceased, and these conflicting claims present the general question which the court is required to determine at this time.

The petitioner, Sarah M. James, was married to the deceased in the state of New York, in the year 1859, and they lived together in that relation until 1871, when they separated. Thereafter James went to Missouri, and on May 18, 1874, commenced in one of the circuit courts of that state an action against petitioner for a divorce, and on July 3, 1874, obtained a decree purporting to dissolve the bonds of matrimony theretofore existing between himself and the petitioner. The petitioner here was, during all the time of the pendency of the divorce proceedings, a resident of the state of New York, and had no actual knowledge of the pendency of that action, the process therein having been served by publication only. James subsequently became a resident of this state, and in February, 1883, married the respondent, then Leonora A. King, in the county of Santa Cruz, in this state, and thereafter they lived together as husband and wife until about the time of his death, which occurred in April, 1887.

It will be seen from the foregoing statement that the decision of this case must turn upon the question of the validity of the decree of divorce which the deceased obtained in the state of Missouri, and as to what effect shall be given to it in this state.

While there is some conflict in the decisions upon this point, we entertain no doubt that a decree of divorce which has been

regularly obtained in one state, by a citizen thereof, against a non-resident defendant constructively served with process in the action, and without other notice, and which is valid and effectual in the state in which such decree is rendered, is equally valid in a sister state. (*Ditson* v. *Ditson*, 4 R. I. 87; *Leith* v. *Leith*, 39 N. H. 20; *Gould* v. *Crow*, 57 Mo. 200; 2 Bishop on Marriage and Divorce, 6th ed., secs. 156, 157, 199 *e*. See also *Pennoyer* v. *Neff*, 95 U. S. 734, 735; *Cheely* v. *Clayton*, 110 U. S. 701.)

We do not understand the appellant to question this proposition, but her contention is that the decree referred to is absolutely void: 1. Because the complaint in the action in which the decree was given did not state sufficient facts to entitle the plaintiff therein to a divorce; 2. That the court did not have jurisdiction to render it, for the reason that the deceased was not a resident of the state of Missouri for one year next before the commencement of the action resulting in the decree, such residence being necessary under the laws of that state in order to give its courts jurisdiction in actions for divorce; and 3. Because no process was ever issued in the action. These objections will be noticed in their order:—

1. The attack here made upon the judgment in *James* v. *James* is collateral, and it is well settled that the judgment of a court having general jurisdiction of the subject-matter involved in the judgment cannot be successfully attacked in a collateral proceeding because of an imperfect or defective complaint in the action in which it was rendered. If the facts stated in the complaint are not sufficient to entitle the plaintiff to the relief demanded therein and awarded by the judgment, the action of the court in deciding otherwise and rendering its judgment in accordance with the prayer of the complaint can be nothing more than error. (*Head* v. *Daniels*, 38 Kan. 1; *Rowe* v. *Palmer*, 29 Kan. 337; *Frankfurth* v. *Anderson*, 61 Wis. 107; Van Fleet's Collateral Attack, sec. 61. See also *Blondeau* v. *Snyder*, 95 Cal. 521.)

The complaint in *James* v. *James* was sufficient to inform the court and the defendant therein of the relief which the plaintiff demanded and of the facts upon which he based his right to the relief sought, and this was all that was necessary in the way

of a statement of facts to give the court jurisdiction of the subject-matter of the action.

2. In regard to the second ground of objection to the decree in *James* v. *James*, we agree with appellant that it is competent to collaterally impeach the record of a judgment rendered in another state by extrinsic evidence showing that the facts necessary to give the court pronouncing it jurisdiction to proceed, did not exist; and this is true although the record sought to be impeached may recite the existence of such jurisdictional facts. (*Thompson* v. *Whitman*, 18 Wall. 457; *Grover & Baker Machine Co.* v. *Radcliffe*, 137 U. S. 287; *Starbuck* v. *Murray*, 5 Wend. 148; 21 Am. Dec. 172; *Eager* v. *Stover*, 59 Mo. 87.) But in this case there was a substantial conflict in the evidence as to whether or not the deceased was a *bona fide* resident of the state of Missouri at the time and for one year prior to the commencement of the divorce proceeding there, and, this being so, we cannot disturb the implied finding of the court below to the effect that he was such a resident and had resided in the state for the length of time alleged in his complaint in that action.

3. The laws of the state of Missouri in regard to the constructive service of process upon non-resident defendants in actions for divorce were introduced in evidence, from which it appears that the process prescribed in such cases is an order made by "the clerk or court in vacation . . . . directed to the non-residents or absentees, notifying them of the commencement of the action; and stating briefly the object and general nature of the petition," etc., such order to be published for four weeks "in some newspaper, . . . . which the court, judge, or clerk making the order may designate as most likely to give notice to the person to be notified." The order directing the defendant to appear in the divorce proceedings of *James* v. *James* was made by the clerk of the court in vacation. In form and contents it complied with the statute and was entered by him in the proper book of record kept in his office, but the name of the clerk was not signed to such entry. The copy of the order as published purported to be attested by the clerk, with the seal of the court, and was published in the paper named in the order for the length of time required by the order and the laws of the state of Missouri.

Upon this state of facts the appellant contends that no process was ever issued in the action of *James* v. *James*, and that the order notifying the petitioner here to appear as defendant therein was absolutely void because of the failure of the clerk to sign the same as entered by him in the records of the court; and that the default judgment taken against the petitioner here, as defendant in that action, was and is, for this reason, void in the broadest sense of that word, and must be so held in this collateral attack upon that judgment; but we do not think so. In the cases of *Wilson* v. *Owen*, 45 Ala. 451; *Costley* v. *Driver*, 45 Ala. 230; *Winnemore* v. *Mathews*, 45 Ala. 449, cited by appellant, and also in *Sheppard* v. *Powers*, 50 Ala. 377, it was held that a summons not signed by the clerk issuing it is invalid and will not support a judgment by default. But the question arose in each of these cases upon a direct appeal from the judgment based upon such defective summons, and not in a collateral attack upon the judgment as in the case at bar. And as the rule in relation to the effect of errors or irregularities of practice in obtaining a judgment is not the same in the case of a direct appeal from the judgment as when the judgment is collaterally assailed upon the same grounds, we do not regard the cases just referred to as any authority for the proposition that a judgment regular in all other respects must be held void, when collaterally brought under review, because of such an infirmity in the process upon which it is based. There is a clear distinction between the entire want of jurisdiction and an irregularity in some one of the steps taken in obtaining jurisdiction. In the former case the judgment is absolutely void at all times and whenever brought forward or called in question, but, in the latter case, the judgment is valid until reversed or set aside.

"No principle of law," says Mr. Black in his work on Judgments, "is more firmly settled than that a judgment of a court of competent jurisdiction, so long as it stands in full force and unreversed, cannot be impeached in any collateral proceeding on account of mere errors or irregularities not going to the jurisdiction." (1 Black on Judgments, sec. 261. See also 1 Freeman on Judgments, 4th ed., sec. 126.) In the case of *Ambler* v. *Leach*, 15 W. Va. 677, the court, in a careful

opinion reviewing many cases, reached the conclusion that a summons, otherwise regular, is nót absolutely null and void because not signed by the clerk, and that a judgment by default based thereon should not be held invalid upon a collateral attack. It is true that in the judgment held good in the case just mentioned, the defective summons was personally served upon the defendant, while in the judgment now under consideration the service was by publication, but we do not regard this difference as material to the question we are now discussing. The order, as actually published in the case of *James* v. *James*, was full and complete, and purported to be attested by the proper officer, and we think that the neglect of the clerk to sign his name at the foot of the order entered by him in the proper book kept for the entry of such orders, should be treated in this collateral attack upon the judgment based on such order as a mere clerical omission in a matter more of form than substance, and such as was certainly cured by the entry of the judgment. The order was, in fact, made when it was entered in the records of the court, and while it would have been more regular to have authenticated it with the signature of the clerk, the irregularity was not of such vital character as to deprive the court of jurisdiction to enter the judgment which it did, based upon the constructive service of process, of which that order was a material part.

4. It also appears from the record before us that after the rendition of the decree of divorce, James returned to the state of New York, and the petitioner here brought an action against him to obtain a divorce from bed and board, and in October, 1874, obtained such a judgment against him, and it was also further adjudged in that action that he pay to her for the support of herself and children twenty-five dollars per week and costs of the action. The validity of the decree of divorce obtained by James in the state of Missouri was not directly put in issue in that action, and there is nothing in the record to indicate that it was ever brought to the attention of the court of New York rendering this latter judgment. We do not think that the judgment just referred to, although it is necessarily based upon the fact that the parties thereto were then at its date husband and wife, is a bar to the right of the respondent to assert in

this proceeding the binding force of the former decree of divorce rendered in the state of Missouri in the case of *James* v. *James*, and the lawfulness of her subsequent marriage to the deceased in this state. The decree of divorce obtained by the deceased in Missouri was valid, and established the *status* of the deceased as an unmarried man, leaving him free to again enter into the marriage relation with any other person consenting thereto. His failure to plead the judgment of divorce in bar of the subsequent action brought by the petitioner for the separation from bed and board, and the judgment of the court in New York decreeing such separation, did not have the effect to change the *status* of deceased from that which was given him by the decree of divorce rendered in the state of Missouri. After that decree, and until reversed or vacated by some appropriate proceeding, his *status* as a single man could not be changed without his consent.

Judgment and order affirmed.

FITZGERALD, J., and McFARLAND, J., concurred.

Hearing in Bank denied.